UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

        Civil Action 2:13-md-2433
        CHIEF JUDGE EDMUND A. SARGUS, JR.
        Magistrate Judge Elizabeth Preston Deavers

This document relates to: *Angela Swartz and Teddy Swartz v. E. I. du Pont de Nemours and Company*, Case No. 2:18-cv-00136.

## DISCOVERY ORDER NO. 13-A

### Defendant's Motion for Reconsideration of Discovery Order No. 13

This matter is before the Court on Defendant's Motion for Reconsideration of the Court's Order Denying a Rule 35 Medical Examination of Plaintiff (ECF Nos. 36, 38, 42[1]), Plaintiff's Memorandum in Opposition (ECF No. 59), and Defendant's Reply (ECF No. 60). For the reasons that follow, the Court **DENIES** Defendant's Motion.

I.

Defendant DuPont de Nemours and Company moves this Court to reconsider Discovery Order No. ("DO") 13, in which the Court denied DuPont's request for an independent mental examination of Plaintiff Angela Swartz. As support for its request, DuPont states:

> [In the briefing the Court considered in DO 13,] Mrs. Swartz argued that two of the factors determining whether a Rule 35 mental exam was warranted were when a plaintiff made "an allegation of a specific mental or psychiatric injury or disorder" or "intends to offer specific expert testimony in support of [a] claim for emotional distress damages[.]" *Id.* She then stated that both of these factors were "not present in the case at bar[.]" *Id.*

That statement was not true.

---

[1] With the Court's permission, DuPont filed the motions docketed at 36 and 42 under seal because they contain Mrs. Swartz's confidential medical information. DuPont appropriately redacted the confidential information and filed that version at docket number 38.

1

> [Since DO 13 was issued], *flagrantly contradicting* her representations to the Court, Mrs. Swartz submitted an expert report supporting her claim of emotional distress. *See* Expert Report of Dr. Vitaly Margulis ("Margulis Report") [ECF No. 27-1] at 5–6. Among other things, Dr. Margulis opined that Mrs. Swartz's emotional distress was severe, ongoing, and arose from a specific mental injury. *Id.*

(Def.'s Mot. for Reconsideration at 1, ECF No. 42.)

With regard to the law applicable to this issue, DuPont posits:

Per DO 13, a plaintiff's mental condition is in controversy when "any of the following factors exist in the case":

> (1) a tort claim is asserted for intentional infliction or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) plaintiff intends to offer expert testimony in support of a claim for emotional distress damages; and/or (5) plaintiff concedes that her mental health condition is in controversy within the meaning of Rule 35.

*Id.* at 3 (citing DO 13 at 5–6); *see also Fox v. Gates Corp.*, 179 F.R.D. 303, 307 (D. Colo. 1998) (courts and DuPont refer to these enumerated factors as the "*Fox* factors").

The Court disagrees with DuPont's assessment of Dr. Margulis' Expert Report and its assessment of this Court's application of the relevant law.

Initially, the Court corrects Defendant's misunderstanding of the application of the law in DO 13. That is, the Court did not hold that the existence of one of the enumerated *Fox* factors places a plaintiff's mental condition "in controversy." The portion of the sentence from which DuPont quotes, taken in isolation, could be interpreted in such a way. However, when taken in context of the sentence and opinion, it is clear that the existence of any one or more of the *Fox* factors *may* cause a court to find that it is more likely a plaintiff has placed her mental condition "in controversy" as that phrase is defined under Rule 35. This Court stated:

2

> The majority of courts, including numerous district courts in the Sixth Circuit, determine whether the claimed emotional distress is "garden variety" *by evaluating whether any of the following factors exist in the case* . . . .
>
> Courts find it *more likely* that emotional distress claims are not garden variety when the plaintiff offers expert testimony to support her claim for emotional distress damages.
>
> . . . .
>
> As shown above, none of the factors courts utilize to determine whether the claimed emotional distress is "garden variety" are present in this case. Further, the Court *finds that there are no other facts or circumstances present* in this case that would cause this Court to find that Mrs. Swartz's emotional distress allegations are anything more than those that any individual diagnosed with cancer would claim.

(DO 13 at 5, 12, 13) (emphasis added)

Reading the Court's decision on Rule 35 in its entirety shows that the analysis entails an evaluation of whether any of the enumerated *Fox* factors exist, or whether any other relevant factors are present. A court then, in its discretion, may find the type of "special circumstances" necessary to order a Rule 35 examination. *T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cty.*, 106 Fed. R. Evid. Serv. (Callaghan) 1060, 2018 WL 3348728, at *10 (M.D. Tenn. July 9, 2018) (stating that "the majority of courts will look for allegations of special circumstances that distinguish a case from more run-of-the-mill claims. . . . Courts *may* find those special circumstances present when" some or all of the five *Fox* factors are present) (emphasis added). "Thus, even when the good cause and in controversy requirements of Rule 35 have been met, '*it is still within the sound discretion of the trial court as to whether to order an examination.*'" *Shadix-Marasco v. Austin Reg'l Clinic P.A.*, 2011 U.S. Dist. LEXIS 54559, *6-7, 2011 WL 2011483 (emphasis added) (citing *Kador v. City of New Roads*, 2010 U.S. Dist. LEXIS 52382, 2010 WL 2133889, at *2 (M.D. La. May 27, 2010)).

"Under this [*Fox*] standard, a party's emotional distress is 'in controversy' and the Court may order a mental examination (if the other conditions are met) when the emotional distress is

3

unusually severe, requires an expert to explain, or is described in clinical terms. When the emotional distress is less serious, it is not 'in controversy' and the Court will not order a mental examination." *Ricks v. Abbott Laboratories*, 198 F.R.D. 647, 649 (D. Md. 2001).

> The *Fox* standard reflects a recognition that there is a difference between more serious emotional distress that might be diagnosed and treated as a disorder by a psychiatrist and the less serious grief, anxiety, anger, and frustration that everyone experiences when bad things happen. Plaintiffs may recover damages for either type of distress. Under the *Fox* standard, however, a defendant cannot require a plaintiff to submit to a mental examination when the plaintiff alleges only the latter kind of emotional distress.

*Id.*

Therefore, this Court evaluates whether any of the five *Fox* factors, or any other relevant factors, exist and in its discretion determines whether a defendant has affirmatively shown that the plaintiff has placed her mental condition "in controversy" and good cause exists for an independent examination. While courts "generally order mental examinations if one of these factors are present," *Ricks v. Abbott Laboratories*, 198 F.R.D. at 647, there are conceivable situations where a plaintiff has one or more of the factors present but has not placed her mental condition in controversy. In the instant action, however, none of the *Fox* factors is present.

The Court now turns to DuPont's assessment of Dr. Margulis' Expert Report and what it contains that allegedly supports reconsideration of DO 13. In DO 13 the Court found:

1. "Mrs. Swartz does not bring a claim for intentional or negligent infliction of emotional distress."

2. "Mrs. Swartz has not alleged 'a specific mental or psychiatric injury,' and instead alleges only pain and suffering as a result of her physical cancer diagnosis, treatment, and monitoring."

3. Mrs. Swartz does not claim unusually severe emotional distress; she "claims no physical injury resulting from her emotional distress, nor any emotional distress that does not frequently accompany a diagnosis of cancer."

4

4. "Mrs. Swartz, like the four plaintiffs in the trials before her, will not offer any expert testimony on her claim of emotional distress."

5. "Mrs. Swartz does not concede that her mental condition is in controversy within the meaning of Rule 35."

(DO 13 at 6, 11, 12, 13)

DuPont moves for reconsideration of the Court's conclusion in numbers two and four based upon its assessment of Mrs. Swartz's Specific Causation Expert's Report. In his Expert Report, Dr. Margulis indicates the parameters of his engagement:

> I was asked to opine as to whether Mrs. Angela Swartz's exposure to perfluorooctanoic acid (hereinafter referred to as "C8" a/k/a PFOA) was a substantial contributing factor to the development of her renal cell carcinoma ("RCC"). To answer these questions, I reviewed the materials listed in Appendix D to this report, including Mrs. Swartz's relevant medical records and discovery materials, and conducted a complete history and physical examination of Mrs. Swartz.
>
> I also relied on my education, training and professional experience. In forming my opinions, I utilized the standard methodology of my education, training and experience as a urologist and urologic oncologist, which included conducting a differential diagnosis. Additionally, as is common practice in the ordinary course of my work, I have relied on the work of other experts in various fields as part of my differential diagnosis. Finally, all of the opinions that are set forth in this report are stated to a reasonable degree of medical and scientific certainty.

(Margulis Rep. at 3, ECF No. 27-1.) Dr. Margulis concludes with the following opinion:

> It is my opinion to a reasonable degree of medical certainty, based on my education, training, and experience, together with my review of the documents and information referenced herein, along with my examination of Mrs. Swartz, that it is more likely than not that her exposure to C8 was a substantial contributing factor in causing Mrs. Swartz's RCC.
>
> It is also my opinion to a reasonable degree of medical certainty, based on my education, training, and experience, together with my review of the documents, literature, and information referenced herein, that Mrs. Swartz's renal cell carcinoma began in her kidney years prior to the March 16, 2017 diagnosis. A review of the medical literature indicates that RCC has a constant and consistent tumor cellular doubling time of anywhere from 174–913 days, depending on patient, with a mean of approximately 460 days. Additionally, another large study reported a growth rate of .13 cm/year.

5

Based on this information, and the reported size of the tumor at the time of diagnosis, it would be undisputed that Mrs. Swartz's tumor first began growing years prior to her March 16, 2017, diagnosis and could have first begun to develop as long as 15 years earlier. Admittedly, data on growth rates of RCC are limited because most cancers are treated as soon as they are discovered and RCC patients are usually asymptomatic prior to diagnosis.

Moreover, I further conclude that as a direct result of her RCC kidney cancer and accumulative C8 exposure, Mrs. Swartz will continue to require monitoring and will remain at an increased risk for cancer for the remainder of her life.

*Id.* at 8.

DuPont maintains that Dr. Margulis offers expert testimony on the "specific mental injury" of "severe fear and anxiety." (DuPont's Reply at 2.) DuPont bases these conclusions on the following portions of Dr. Margulis' report:

Summary of Opinions

• Mrs. Swartz suffered from clear cell renal cell carcinoma, Stage I.

• Cancer of a major organ is accepted in the medical community as a catastrophic diagnosis for any patient, including Mrs. Swartz.

• While Mrs. Swartz's diagnosis of a pathologic T 1, a Fuhrman nuclear grade 2 renal cell cancer of 2.0 cm diameter was not until March 26, 2017, the asymptomatic initial formation of the cancer cells would have begun much earlier in time and potentially as long as 15 years before the March 2017, diagnosis.

• At the time of her diagnosis, Mrs. Swartz had limited risk factors for RCC, which included exposure to C8 and obesity.

• At the time of her diagnosis, the only risk factor which Mrs. Swartz had that is conclusively causative in nature was her C8 exposure

• Based on my review of the relevant medical records, case discovery materials, the C8 Science Panel Probable Link Evaluation of Cancer, and the expert report of Dr. Macintosh, Mrs. Swartz's exposure to C8 was a substantial contributing factor for her primary RCC.

6

- As a result of her RCC, Mrs. Swartz required major surgery, with hospitalization, the permanent removal of approximately one third of her right kidney, a post-nephrectomy recovery and subsequent related care. She also experienced severe physical pain and suffering as well as emotional distress and fear of death and recurrence of her cancer.

- As a result of her RCC, Mrs. Swartz has been and still is at an increased risk for developing and/or recurrence of her cancer in the future and requires ongoing monitoring throughout her life to ensure her cancer remains in remission.

- Postoperative adhesions from abdominal and pelvic surgical procedures can cause significant morbidity, including bowel obstruction and chronic abdominal and pelvic pain and bloating. Laparoscopic surgery has lessened but not extinguished the incidence of these adhesions. Mrs. Swartz remains at risk for late complications related to intraabdominal postoperative adhesion formation.

- Fear of cancer recurrence is a normal emotional response to having cancer and undergoing continued surveillance for cancer recurrence. Mrs. Swartz's emotional distress related to her kidney cancer diagnosis and subsequent monitoring is appropriate considering her personal history, what is reported in the medical literature, what was reported in her contemporaneous records, and what I have observed in similarly situated cancer patients.

(Margulis Rep. at 8, ECF No. 27-1.)

Dr. Margulis' Expert Report shows without question that he has offered no expert opinion on any specific mental injury. Dr. Margulis was asked to opine as to whether C8 "was a substantial contributing factor to the development of her renal cell carcinoma." Dr. Margulis did not conduct any psychiatric or psychological examination or evaluation and simply discusses the emotional distress in the context of Mrs. Swartz's cancer diagnosis and treatment (*i.e.*, "Mrs. Swartz's emotional distress related to her kidney cancer diagnosis and subsequent monitoring is appropriate considering her personal history, what is reported in the medical literature, what was reported in her contemporaneous records, and what I have observed in similarly situated cancer patients.").

As this Court explained in DO 14, "discussion of the emotions attendant to a physical illness does not convert a physician's testimony into one of an expert in psychology or

7

psychiatry." (DO 14 at 7, *Abbott* Docket 17-cv-998, ECF. No. 55; MDL Docket 13-md-2433, ECF No. 5240). Dr. Margulis is a urologic oncologist. His report is directed toward the specific cause of Mrs. Swartz's physical injuries. Dr. Margulis comments on Mrs. Swartz's emotional distress only in the context that he views the emotional impact of cancer on any of his patients.

If, however, a plaintiff offered expert testimony, for example, that the emotional distress attendant to his diagnosis of cancer impacted him in a more significant way because he suffers from a psychiatric disorder such as depression or PTSD, then that plaintiff may be placing his mental condition in controversy. But simply because a plaintiff was treated for a psychiatric or psychological condition prior to and otherwise unrelated to the physical injury, does not automatically place his mental condition "in controversy" under Rule 35.

Dr. Margulis' report and opinion are of a different quality than what DuPont seeks to generate using the expert psychiatrist/college professor. Permitting a Rule 35 examination in this context would *de facto* place any cancer patient's mental state "in controversy" and would mean that such examinations could be ordered routinely in personal injury cases such as the one at bar. That is exactly what the Supreme Court cautioned against in *Schlagenhauf v. Holder*, 379 U.S. 104, 117–22 (1964) (directing that Rule 35 "requires discriminating application by the trial judge, who must decide . . . whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements," which are "not a mere formality," and "require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination").

Accordingly, the Court concludes that DuPont has failed to affirmatively show that Mr. Swartz's mental condition "is really and genuinely in controversy," as required by Rule 35.

8

## IV.

Based on the foregoing, the Court **DENIES** Defendant's Motion for Reconsideration of the Court's Order Denying a Rule 35 Medical Examination of Plaintiff. (ECF No. 42.)

**IT IS SO ORDERED.**

_7-26-2019_
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**