**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE: E. I. DU PONT DE NEMOURS AND COMPANY C-8 PERSONAL INJURY LITIGATION,**

**Civil Action 2:13-md-2433**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth Preston Deavers**

**This document relates to:**

***Angela Swartz and Teddy Swartz v. E. I. du Pont de Nemours and Company*, Case No. 2:18-cv-00136.**

# EVIDENTIARY MOTIONS ORDER NO. 28-A

## Defendant's Specific Causation Experts' Affirmative Causation Opinions

This matter is before the Court on Defendant E. I. du Pont de Nemours and Company's Brief Regarding its Specific Causation Experts (*Swartz* ECF No. 153) and Plaintiffs' Response to DuPont's Brief (*Swartz* ECF No. 157).

## I.

Trial in this case began on January 21, 2020. At the end of the first day of trial, after the jury was selected and released for the day, the parties reviewed with the Court several issues related to the opening statements that would be given the following day. During that time, DuPont raised a topic related to its specific causation experts offered in the *Swartz* case: Samuel M. Cohen, M.D., Ph.D. and Douglas M. Dahl, M.D., who were both the subject of motions to exclude under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) and Rule 702 of the Federal Rules of Evidence. (Pls' Mot. to Exclude the Specific Causation Opinions and Testimony of Def's Expert Dr. Samuel Cohen, *Swartz* ECF No. 53, Def's Mem. in Opp., *Swartz*

ECF No. 71, Pl's Reply Brief, *Swartz* ECF No. 78); (Pls' Mot. to Exclude the Specific Causation Opinions and Testimony of Def's Expert Dr. Douglas Dahl, *Swartz* ECF No. 55, Def's Mem. in Opp., *Swartz* ECF No. 69, Pls' Reply Brief, *Swartz* ECF No. 79).

DuPont offered Dr. Cohen and Dr. Dahl to opine on the specific cause of Mrs. Swartz's kidney cancer and to critique her specific causation expert's opinion. The Court granted Plaintiffs' motions to exclude these two experts' affirmative specific causation opinions. (EMO No. 28, Granting Pls' Mot. to Exclude Def's Specific Causation Experts Affirmative Opinion and Granting Pl' Mot. to Exclude Def's Second Specific Causation Expert's Affirmative Causation Opinion, *Swartz* ECF No. 135, MDL ECF No. 5294).

Although the Court granted Plaintiffs' motions to exclude the affirmative causation opinions of Dr. Cohen and Dr. Dahl, DuPont indicated that its view of the Court's decision was that the Court "ruled out one of several bases for their opinions [but the Court] didn't rule out their entire decisions." (Tr. Vol. 1 at 267.) Plaintiffs disagreed. After some discussion, the Court directed the parties to meet and confer to attempt to reach agreement on this issue.

The following day, at the January 22, 2020, 8:30 a.m. conference, the Court addressed the specific causation issue, upon which the parties had not come to agreement. Discussing the issue with the parties, the Court stated that "the opinions and conclusions [of the experts' have] been stricken," and any new or modified opinion offered during trial would violate all of the Court's pretrial scheduling orders and give the opposing side "no chance of rebuttal, or more discovery." (Tr. Vol. 2 at 12.) Nevertheless, the Court was inclined to hear DuPont's arguments in more depth but was unable to do so without delaying the trial scheduled to begin the same day.

Therefore, the Court offered DuPont the opportunity to provide a brief informing the Court of "exactly what [DuPont] expect[s] the witness to say and why [the Court's] order didn't

exclude it." (Tr. Vol. 2 at 14.) DuPont requested permission to file the brief the following Monday, which the Court granted. Plaintiffs were permitted to file a response two days later.

**II.**

The parties timely filed their briefs addressing the testimony DuPont proposes to elicit from its specific causation experts and why that testimony was not previously excluded in EMO 28. By way of background, the affirmative causation opinions offered in this case are as follows:

> Dr. Cohen offers the following ultimate causation opinions as to Mrs. Swartz:
>
> > In summary, it is my opinion, based on a reasonable degree of medical and scientific certainty, that Mrs. Swarts, with her long history of obesity and hypertension and relatively low exposures to C8, would have developed her renal cell carcinoma even without her exposure to C8.
> >
> > Her amount of increased risk of developing kidney cancer from her C8 exposure would have been very small, and insignificant compared to her substantial amount of increased risk from her hypertension and her increased BMI.
>
> (Cohen Expert Report at 7, Swartz ECF No. 53-3.)
>
> > According to the scientific panel and these other publications, the average increased risk from C8 for kidney cancer is approximately 10 percent. Her exposure is below the average, so her increased risk would be anticipated to be less than that 10 percent, so that's what I went on.[1]
> >
> > . . . . let me explicitly state what I'm saying is that I think she's at the low end of the Leach class members, and so her overall risk would be at the low end of the C8 class . . . .

[1] The Court pauses here to note the obvious. Dr. Cohen emphasizes in his calculations that a person in the position of Mrs. Swartz had a 10% chance of getting kidney cancer from C-8. He makes no estimate of the chance of C-8 having caused kidney cancer in someone who indisputably had kidney cancer. That opinion is not helpful to the jury in that such a prediction is irrelevant in a case in which no party disputes that Mrs. Swartz has kidney cancer. Dr. Cohen is a urologist, opining on specific causation only, and certainly not on public health or corporate conduct.

(Dep. of Dr. Cohen, June 14, 2019 at 36, 99–100, ECF No. 53-2).

. . . .

While DuPont will only present one specific causation expert at trial, it has named and provided reports for a second expert as well: Douglas M. Dahl, M.D. Dr. Dahl opines:

> After assessing the applicable risk factors for development of kidney cancer, it is my medical opinion that it is more probable than not that Mrs. Swartz developed a very small early stage kidney tumor because of her many years of obesity and hypertension, which greatly increased her risk of getting kidney cancer.
>
> I do not believe that Mrs. Swartz's tumor was caused by C8 exposure, nor was it a significant contributing factor. It is my opinion that Mrs. Swartz's kidney tumors would have developed without any exposure to C8.

(Dahl Expert Report at 6, ECF No. 55-2.)

> Dr. Dahl testified that it is his opinion that there is no way to conclude that C-8 caused Plaintiff's cancer, that there is no data supporting Plaintiff's expert opinion that C-8 was a substantial contributing cause to Plaintiff's cancer, that the Science Panel's work is not "particularly compelling," that the science panel only ever determined there was a 10% increased risk of cancer for class members, that Plaintiff's C-8 level was in the "lower" levels, and that all of this was the foundation for his other opinions as to the cause of Plaintiff's cancer. (6/20/19 Dahl Dep. Tr. at 18:10–16, 40:21–41:11, 42:19–25, 43:21–44:9, 46:5–16, 23–74:6, 95:13-25; *see also* 11/10/16 Dahl Dep. Tr. at 281:13-19, 285:12-16, 294:5-13).

(EMO 28 at 8, 9, 13, *Swartz* ECF No. 135) (citing Pls' Mot. to Exclude Dr. Dahl Specific Causation Testimony at 13–14, *Swartz* ECF No. 55).

In EMO 28, the Court excluded these affirmative specific causation opinions as violative of the *Leach* Settlement Agreement.[2]

[2] The litigation between the parties in this multidistrict litigation ("MDL") began in 2001 in a class action in West Virginia state court captioned *Leach v. E. I. du Pont de Nemours & Co.*, No. 01-C-698 (Wood County W. Va. Cir. Ct.) ("*Leach* Case"). The *Leach* Case ended in

DuPont now contends "that DuPont's specific causation expert should be allowed to give [the opinion] that Mrs. Swartz's kidney cancer was caused by her decades of high blood pressure and decades of medical obesity, and would have occurred without any exposure to C8 in drinking water." (Brief at 1, ECF No. 153.) DuPont continues, maintaining that its "specific causation expert should be allowed to give the following opinion":

> While C8 is capable of causing kidney cancer, because of Mrs. Swartz's decades of medical obesity and decades of high blood pressure, and the fact that her tumor did not start until she had been drinking filtered water with no C8 in it for a long enough period of time that her C8 levels had returned to median United States background levels, she would have gotten her kidney cancer even without any exposure to C8 in her drinking water.

*Id.* at 4.

DuPont reiterates the arguments it made in opposition to Plaintiffs' *Daubert* motions that its "experts expressly **ruled in C8** as **capable of causing Mrs. Swartz's kidney cancer**, and **never ruled C8 out**." (Def's Brief at 1, *Swartz* ECF No. 153) (emphasis in original). DuPont asserts that "[o]nce they identified C8, high blood pressure, and obesity as causative risk factors that applied to Mrs. Swartz, and relying on peer-reviewed scientific literature, the specific causation experts determined to a reasonable degree of medical certainty that her risk of kidney cancer was increased by: (i) at least two-fold due to her medical obesity[2]; and by (ii) approximately two-fold because of her high blood pressure." *Id.* at 2.

---

November 2004 when the parties entered into a class-wide settlement ("*Leach* Settlement Agreement"). (MDL ECF No. 820-8.) In 2013, DuPont moved the Judicial Panel on Multidistrict Litigation to consolidate the individual actions derived from the *Leach* Case before this Court, which was granted. Ultimately, over 3,500 individuals filed cases in this MDL over which this Court has presided since April 2013. Early in this litigation, the parties agreed, and this Court held that they were subject to the *Leach* Settlement Agreement.

Plaintiffs respond that this Court should not permit DuPont's experts to offer these opinions because (1) the opinions have already been specifically excluded in EMO 28 and (2) part of the brief offers "a newly modified opinion to which Plaintiffs would have to investigate, respond, call new trial witnesses, and potentially brief for *Daubert* motions, all while in the middle of the trial in which this modified position would actually be used." (Pls' Resp. Brief at 4.) Plaintiffs arguments are well taken.

Initially, the Court addresses Plaintiffs' assertion that the testimony DuPont seeks to elicit is new – that is, the opinion now "remove[s] Mrs. Swartz's relative risk altogether." (Pls' Brief at 4, *Swartz* ECF No. 157) (emphasis in original). This is a modified opinion that is being offered during trial. The opinion is offered long after the deadlines passed for expert reports, expert discovery, and *Daubert* briefing. It would be patently unfair to permit DuPont's experts to modify their opinions during trial and it would be impossible for the Court to reopen discovery and briefing on the new opinion during trial. On this basis alone, the Court excludes the new, untimely opinion testimony DuPont seeks to elicit from Dr. Cohen or Dr. Dahl.

Next, as can be seen from above, the portions of the new opinion that includes Dr. Cohen's and Dr. Dahl's affirmative causation opinions that "Mrs. Swartz's kidney cancer was caused by her decades of high blood pressure and decades of medical obesity, and would have occurred without any exposure to C8 in drinking water" were already offered and excluded by this Court in EMO 28 because the methodology used to reach them violated the *Leach* Settlement Agreement. As noted above, DuPont reiterates its arguments previously made and addressed in detail by this Court in EMO 28, which the Court incorporates herein. (EMO 28, *Swartz* ECF No. 135; MDL ECF No. 5294.)

Mrs. Swartz's trial is the fifth to be held in this MDL. DuPont and Plaintiffs have filed cross motions for exclusion of the others' specific causation experts in each trial. The Court has provided decisions on these motions, explaining why the *Leach* Settlement Agreement prohibits experts from dissecting the Science Panel's Reports as to general causation. (EMO 1, MDL ECF No. 4079); (EMO 1-A, MDL ECF No. 4226); (EMO 4, MDL ECF No. 4518); (EMO 5, MDL ECF No. 4532); (EMO 9, MDL ECF No. 4777); (EMO 22, MDL ECF No. 4999); (EMO 27, MDL ECF No. 5289); (EMO 28, MDL ECF No. 5294); (EMO 31, MDL ECF No. 5297); (EMO 32, MDL ECF No. 5301). DuPont, however, continues to make the choice to ask its experts to dissect and analyze the Science Panel's Reports in a way that undermines general causation.

The Settlement Agreement requires the Probable Link *Finding* ("it is more likely than not that there is a link between exposure to C-8 and a particular Human Disease among Class Members") to be applied to every member of the six water districts that were contaminated with C-8 by DuPont who can prove that they are a *Leach* Class Member (drinking water with .05 ppb or greater of C-8 for the period of at least one year) who suffers from one or more of the six human diseases for which the Panel issued a Probable Link Finding. (Settlement Agreement ss § § 1.49, 2.1.1; Schedule 2.1.1(B), 12.2.3, MDL ECF No. 820-8.)

The Court has in the numerous decisions cited above, and in Dispositive Motions Order No. ("DMO") 1, DMO 1-A, and DMO 12, explained why the *Leach* Settlement Agreement prohibits this type of inquiry and will not repeat all of those explanations here. (DMO 1, Class Membership and Causation, MDL ECF No. 1679); (DMO 1-A, DuPont's Mot. for Clarification of DMO 1, Class Membership and Causation, MDL ECF No. 3972); (Def's Mot. for Judgment as a Matter of Law or, Alternatively, for a New Trial and Remittitur on Plaintiff Carla Bartlett's Claims). For purposes of this decision, the Court highlights the following:

> The *Leach* Settlement Agreement unambiguously requires[the Probable Link] Findings, not the way in which the Science Panel reached the Findings reported in its reports/evaluations, to apply to the *Leach* Class. (S.A. §§ 1.50, 12.2.3(b)(1) (defining a Probable Link Finding as the Science Panel's "*conclu[sion]* that there is a Probable Link between C-8 exposure and Human Disease(s)") (emphasis added). DuPont's mistake is focusing on the Science Panel's reports/evaluations instead of its Findings.
>
> DuPont, however, does not direct the same focus to the No Probable Link Findings. *DuPont has received the benefit of the No Probable Link Findings –* immunity from lawsuits based on over forty human diseases that tens of thousands of members of the *Leach* Class believe were caused by their ingestion of C-8 that was released into their drinking water by DuPont. *None of those class members may engage in any analysis of the No Probable Link reports/evaluations.* The conclusions reached in the No Probable Link reports, that is, the No Probable Link Findings, universally apply to the *Leach* Class.

(DMO 1-A at 11–14, MDL ECF No. 3972.)

By way of further explanation, the Science Panel issued its conclusions with regard to its Probable Link Reports on cancer on April 15, 2012, stating that it found a link to C-8 among the *Leach* Class members only between two cancers and no others:

> Probable Link Evaluation of Cancer
>
> Conclusion: On the basis of epidemiologic and other data available to the C8 Science Panel, we conclude that there is a probable link between exposure to C8 (also known as PFOA) and *testicular cancer and kidney cancer but not any of the other cancers* that were considered.
>
> . . . .
>
> A "probable link" in this setting is defined in the Settlement Agreement to mean that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA exposure and a particular human disease.

(MDL ECF No. 2813-4) (emphasis added). The Science Panel, therefore, issued Probable Link Findings for testicular and kidney cancer, and No Probable Link Findings for all of the other cancers studied. Under the *Leach* Settlement Agreement, then, *Leach* Class members with any cancer other than testicular and kidney cancer could not bring suit against DuPont, regardless of

what the Science Panel's Probable Link Report said about those other cancers. A review of the Science Panel's work on the cancers studied is instructive.

Throughout the Probable Link Report, the Science Panel explains the "analytical approaches" it utilized in conducting its "several studies of cancers among residents of the Mid-Ohio Valley, and among workers at the Washington works plant." *Id.* at 4. And, while the Science Panel Report on cancer reflects the Panel's engagement in numerous different analyses and studies, the Court here looks at one portion that explains a particular relative risk analysis, which resulted in increased risk findings for testicular, kidney, ***and prostate*** cancers. This portion of the Report utilized four types of analyses, and two different analytical approaches:

> Two different analytical approaches were used, one modeling incidence rates across exposure groups based on small geographical areas, or alternatively, based on water districts; the other was a case-control approach which estimated exposure-related risk comparing each cancer to all other cancers acting as a control. This second method had the advantage that the risks could be adjusted for other information available for the cases (such as smoking and socio-economic indicators).
>
> Using these two different types of exposure estimation, and two different analytic approaches, three sets of analyses were conducted: 1) in Ohio using an individual-level (case-control) approach with estimated serum levels based on residence (categorized into very high, high, medium, low, no exposure) in the time period before cancer occurrence, or 2) in Ohio comparing rates of cancer in different small geographical areas, again divided into very high, high, medium, low, and no exposure categories by estimated serum levels for each area, and 3) combining Ohio and West Virginia data and analyzing risk by water district of residence, in order of descending exposure level: Little Hocking, Lubeck, Belpre, Tupper Plains, Pomeroy, and Mason. For analyses (3) individual-level case-control analyses were conducted.

*Id.* at 4.

The Science Panel then explained the notable findings with regard to testicular, kidney, and prostate cancers. As to prostate cancer, the Science Panel Report indicated:

> For prostate cancer, there was an increase in the highest water district (RR = 1.4, 0.9-2.1) (test for trend across water district p=0.27) using the individual-level approach, and also an elevated RR for highest exposure category using the

> individual-level approach (RR = 1.7, 1.0-2.7) (test for trend across exposure groups p=0.11). However the RR using the geographical area-level approach was not elevated the for highest exposure category (RR=1.0, 0.6-1.7) (test for trend p=0.97).

*Id.* at 5.

In sum, while there was a No Probable Link Finding issued for prostate cancer, the Science Panel found an increased risk of prostate cancer for *Leach* Class members who resided in "highest water district" or that were in the "highest exposure category" when the individual level approach is used in the analysis.

Notwithstanding the results of these relative risk studies, no *Leach* Class member who suffered from prostate cancer is permitted to *ever* bring suit against DuPont even if he was in the highest water district where there was an increased risk of prostate cancer, or he was in the highest exposure category where there was shown an increased risk of prostate cancer. (*Leach* Settlement Agreement § 3.3, MDL ECF No. 820-8) ("[T]he Named Plaintiffs on their own behalf and on behalf of the Class Members, *release and forever discharge [DuPont]* from any and all claims, losses, damages, attorneys' fees, costs, and expenses, whether asserted or not, accrued or not, known or unknown, for personal injury and wrongful death, including but not limited to any claims for injunctive relief and special, general and punitive and any other damages whatsoever associated with such claims, that: (a) relate to exposure to C-8 of Class Members from any and all pathways including, but not limited to, air, water and soil; (b) are based on the same factual predicate as raised in the Lawsuit; and (c) *relate to any Human Disease for which the Science Panel has delivered a No Association Finding or No Probable Link Finding.*)

The No Probable Link *Finding* applies to all *Leach* Class members who suffer from prostate cancer. No causation expert may dissect the Probable Link *Report/Evaluations* in an

effort to undermine the Science Panel's finding that C-8, in the limitations of the study, is not capable of causing prostate cancer. It is the No Probable Link *Finding* that the parties contractually agreed would apply to all *Leach* Class members.

Indeed, of the *Leach* Class that totaled nearly 80,000 people, only approximately 3,600 filed suit alleging that they suffer from a Probable Link Disease. The remaining 75,000 have no ability to ever bring a claim against DuPont no matter what the Science Panel Reports/Evaluations may be interpreted to mean by other experts. It is the No Probable Link Finding that the parties contractually agreed would apply to all *Leach* Class members who suffer from a No Probable Link Disease.

The same holds true for members of the *Leach* Class who suffer from testicular or kidney cancer. No expert may dissect the Probable Link Report in an effort to undermine the Science Panel's Finding that C-8, in the limitations of the study, is capable of causing kidney or testicular cancer. It is the Probable Link *Finding* that the parties contractually agreed would apply to all *Leach* Class members who can prove they have a Probable Link Disease.

**III.**

For the reasons set forth above, the Court **DENIES** DuPont's request to during this trial modify its experts' affirmative causation opinions. The Court also clarifies that EMO 28 did not merely rule out one of several bases for the experts' opinions, but rather excluded their entire affirmative causation opinions because the methodology utilized violated the *Leach* Settlement Agreement. DuPont does not have the burden of proving specific causation, so this exclusion does nothing to lessen Mrs. Swartz's burden. She must still prove that C-8 was a substantial contributing factor of her kidney cancer. DuPont's expert, while not permitted to testify as to

what he ruled in or ruled out in his excluded differential diagnosis, or what he believes to be the more likely cause of Mrs. Swartz's cancer, may still offer critique Mrs. Swartz's expert's opinion. That is, he may testify, as DuPont asks, that he does not believe Mrs. Swartz's expert placed an appropriate amount of weight on certain risk/causal factors such as obesity or high blood pressure because his interpretations of the scientific literature shows that certain BMI or a certain blood pressure increases the risk of kidney cancer by two-fold.

**IT IS SO ORDERED.**

2-7-2020
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**