# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

                          Civil Action 2:13-md-2433
                          JUDGE EDMUND A. SARGUS, JR.
                          Magistrate Judge Elizabeth Preston Deavers

**This document relates to:** *Angela Swartz and Teddy Swartz v. E. I. du Pont de Nemours and Company*, Case No. 2:18-cv-00136.

## OPINION AND ORDER

On February 10, 2020, this Court held a regular morning conference with counsel in advance of the jury trial starting later in the day. On the day before, a Sunday, counsel for both parties deposed Dr. Kamal S. Pohar, an expert whose live testimony had to be finished by video for use at trial the next day. During the deposition, John A. Burlingame, one of the counsel for DuPont, submitted the affidavit to Dr. David Savitz ("Savitz Affidavit"), a member of the Science Panel, whose work and conclusions are at the heart of this case.

At the February 10, 2020 conference, the undersigned expressed his strong disapproval that Mr. Burlingame had used an affidavit that 1) violated an order of this Court; and 2) ignored a representation of DuPont that such testimony was by agreement, impermissible. This Order explains the Court's concern and addresses the issue going forward.

### I.

Initially, because the undersigned was asked by the parties to be available in the event objections were raised in the Sunday deposition, the Court directed John A. Burlingame to submit a list of areas he expected to cover with Dr. Pohar. The Savitz Affidavit, over which there had been much contention, was never mentioned.

1

The Court was ultimately contacted five times during Dr. Pohar's deposition. When the Court excluded evidence, the undersigned offered Mr. Burlingame the opportunity to make a proffer of any excluded evidence. Plaintiff's counsel objected to Mr. Burlingame being permitted the opportunity of making the proffer by questioning Dr. Pohar. The Court overruled Plaintiffs' counsel's objections, explaining how offered and excluded evidence may be proffered so that a record can be made for the Court of Appeals. (Pohar Trial Dep. Tr. at 91) ("There are two ways to make a proffer. You're right, one could be he could summarize what he expects the witness to say, and sometimes that's all you need. But [you could] specifically ask the witness what has been excluded and we'd understand it's not coming in, but it would be their case if the Court of Appeals wants to hear the answers.").

Ultimately, the deposition concluded and Mr. Burlingame began his proffer. During the proffer, he handed Dr. Pohar the Savitz Affidavit and marked it as an exhibit *Id.* at 96 ("Let's go ahead and mark Abbott-D.353). Plaintiffs' counsel objected, and the Court was called. It appeared to the Court that the affidavit was a continuation of a line of questioning of which Mr. Burlingame had informed the Court he would be offering with regard to Dr. Pohar's expert report and his reliance on the Science Panel Reports. The Court was on the telephone with no ability to view the affidavit.

## II.

Mr. Burlingame, however, utilized in his proffer an affidavit that Defense counsel had just recently averred by sworn affidavit was not obtained for use in any case in this MDL:

I, Damond R. Mace, declare and state as follows:

2

> 1. I am lead counsel for Defendant E. I. du Pont de Nemours and Company ("DuPont") in the above-captioned Swartz matter, and DuPont's designated Trial Attorney pursuant to Local Rule 83.4(a). . . .
>
> 9. With respect to Dr. Savitz's affidavit, I vigorously deny that there was any knowing or admitted violation of PTO 8, or of any other Court order.
>
> 10. Dr. Savitz's affidavit was obtained for use in *McClung v. E. I. du Pont de Nemours*, a case that was pending and about to go to trial in Wood County Circuit Court in West Virginia, which was not a part of this MDL.
>
> 11. The purpose of Dr. Savitz's affidavit was to rebut mischaracterizations being made by the plaintiff in that case in pre-trial motions filed by Mr. McClung in front of that court regarding the Science Panel's work. . . . .
>
> 15. After the current issue was raised by Plaintiffs' counsel, I reviewed PTO 8. It was clear to me that PTO 8 did not apply to the current situation, *inter alia* because PTO 8 only applied to the MDL, not to the separate case in West Virginia state court that was about to go to trial there; . . . .
>
> 16. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

(2019 Mace Aff. ¶¶ 1, 9, 10, 11, 15, MDL ECF No. 5271-4) (referring to Pretrial Order No. ("PTO") 8).

By way of background, the issue of speaking to members of the Science Panel was first addressed in September 2013:

> MR. MACE: Well, I think the position I espoused to [Plaintiffs' counsel] Mr. Conlin, and I said I needed to check with my team, but I said my personal view was that my read of everything, and reading between the lines, was that the science panel came in. They did their job, however they did it.
>
> But they're basically *off limits to either party*. They can't be witnesses. They can't be experts. We can't go subpoenaing them. Their findings, such as they are, are in their findings that they had published.
>
> . . . . none of us should be hassling them. . . .
>
> COURT: That would be my strong preference, too, just from reading the method of the way you agreed in the case. So does everybody see it the same way?
>
> MR. CONLIN: Yes, Your Honor.

3

MR. BILOTT: Yes, Your Honor.

COURT: Great. Okay.

(Case Mngmt. Conf. Sept. 5, 2013, MDL ECF No. 54) (emphasis added).

After that conference, the Court issued Pretrial Order No. ("PTO") 8 which states:

> The Court additionally conferred with the parties about discovery as it relates to the Science Panel findings and the Science Panel members. The parties are in agreement that although the Science Panel findings are available for utilization in this MDL, *the individual panel members are not available for any individual discovery*.

(PTO 8 at 2, ECF No. 50) (emphasis added).

For six years the parties abided by this Court's Order -- through four trials and settlement of over 3,550 cases.

On March 18, 2019, at a Case Management Conference, counsel for Plaintiffs informed the Court that in their view Defense counsel had violated PTO 8 by obtaining an affidavit of a member of the Science Panel, *i.e.*, the Savitz Affidavit. Lead counsel responded that the affidavit was obtained for the McClung case in West Virginia – not for this MDL, stating:

> MR. MACE: I take great umbrage, Your Honor, to any direct violation of this Court's orders. This Court's orders are not binding in other contexts that they chose to litigate.

(March 18, 2019, Case Mngmt. Conf. at 27, ECF No. 5196.)

The Court heard the parties' positions and stated:

> THE COURT: So nobody has offered this yet. I think this is the sort of thing we can address if -- if and when this is offered.
>
> [the parties agreed]
>
> THE COURT: So, we'll take it from there. If it's offered, I'll deal with it at that time.

*Id.* at 27, 28.

Six month later, in September 2019, Plaintiffs moved for sanctions against DuPont for taking without Plaintiffs' counsel present a second trial deposition of Bernard Reilly, while a motion for a protective order from the Reilly deposition was under consideration by this Court. (Pls' Mot. to Strike and Destroy the August 2, 2019 Deposition Testimony of Bernard J. Reilly, as well as Request for Sanctions Due to Repeated Violations of This Court's Orders, MDL ECF No. 5267.) In the motion for sanctions, Plaintiffs also raised the issue of the Savitz Affidavit, asking the Court to strike, destroy, or seal the affidavit and to sanction defense counsel.

In DuPont's response to the motion to strike, destroy, or seal the affidavit and to sanction defense counsel, filed just five months ago, DuPont made clear that the Savitz Affidavit was not obtained nor being offered in any case in this MDL:

> Plaintiffs' demand that Dr. Savitz's affidavit, obtained for use on the verge of trial in a different court in a different state, be stricken and destroyed, and that any copies that cannot be destroyed be sealed, is also unprecedented and extraordinary. <u>DuPont obtained that affidavit in connection with a separate West Virginia state court</u> case to oppose a pre-trial motion filed in that separate action by a Mr. McClung . . .
>
> The Savitz Affidavit is part of the public record in that West Virginia state court as part of DuPont's opposition to a motion *in limine* that the plaintiff in that case filed. *See* DuPont's Opposition to Plaintiff's MIL #1 in McClung (Exhibit C).

(Def's Mem. in Opp. to Motion to Strike and Destroy and for Sanctions at page 2, 3, MDL ECF No. 5271) (emphasis added).

DuPont concluded:

> Plaintiffs' unprecedented demand that this Court interfere with other courts handling other cases, and order other judges to strike, destroy, or seal Dr. Savitz's affidavit as filed in *different litigation* in a *different court*, and also sanction DuPont for its wholly permissible conduct in other litigation and outside of this Court's jurisdiction is baseless, and the affidavit was obtained for a different case pending in a different court in order to rebut mischaracterizations being made by Mr. McClung to that other court. Mace Decl. at ¶¶ 10-11.

*Id*. at 23 (emphasis in original). Defendant supported this brief with the affidavit of Mr. Mace that is quoted above.

5

In sum, DuPont has stated to the Court by <u>sworn affidavit of lead counsel</u> that the Savitz Affidavit was obtained for a different case pending in a different court (outside of this Court's jurisdiction). Indeed, lead counsel takes great umbrage at even the suggestion that the defense obtained the Savitz Affidavit to be utilized in any case in this MDL in violation of PTO 8.

Yet, Mr. Burlingame took this hotly contested, unoffered evidence, obtained through discovery in a separate case in a different court, and put it before a witness in a proffer in *this* case—in direct contradiction of sworn statements of lead counsel to this Court.

### III.

The significance of the Savitz Affidavit turns upon the *Leach* Settlement Agreement, reached by DuPont and over 70,000 class members who resided within six water districts near DuPont's Washington Works plant. The settlement agreement created a three-member Science Panel, mutually agreed upon, and included the affiant, Dr. Savitz. The three scientists, all epidemiologists, thereupon conducted one of the largest epidemiological studies in U.S. public health history. Each plaintiff in the 3,550 cases initially filed in this Court and the 60 post-2017 settlement cases now pending are members of the class who allegedly suffer from a medical condition linked to C-8, the chemical discharged from DuPont's plant.

The *Leach* Settlement Agreement defined the work, the questions and the legal consequences of the Science Panel. The scientists were tasked with determining whether "evidence demonstrates a probable link between C-8 exposure and any Human Disease." (*Leach* Settlement Agreement ¶ 12.2.3(b)). This question, to be answered in the affirmative or the negative, is a matter of science.

What DuPont has continued to contest is the legal significance that follows from the terms of the *Leach* Agreement.

First, in the event the Science Panel did in fact find a probable link to a particular disease, as it did with both kidney and testicular cancer, "Defendant <u>will not contest the issue of General Causation</u> between C-8 and any human disease as to which a probable link has been delivered, but reserves the right to contest Specific Causation and damages . . . ." *Id.* ¶ 3.3 (emphasis added). In other words, by agreement, the scientific determination of a probable link to a specific disease bound DuPont on the legal issue of general causation, a matter it conclusively agreed not to contest. To be clear, by agreeing not to contest general causation, DuPont necessarily agrees to such a finding. The plain language says so. Any other interpretation would have a jury decide an issue on which one side, DuPont, is precluded from raising.

Second, DuPont obtained a significant benefit from the findings of the Science Panel. Because of other no-link findings by the Science Panel, at least 66,400 members of the class, are forever barred from bringing claims against DuPont regardless of any then existing or future injuries they believe were caused by C-8. *Id.* ¶ 3.4.

With all of this in mind, the Savitz Affidavit, obtained by DuPont, seeks to undo the binding agreement DuPont reached in the *Leach* Settlement. The affidavit was obtained without any input from the plaintiffs. Savitz misapprehends both the *Leach* Settlement Agreement and the limitations of his expertise. The statement goes far beyond his qualifications as an epidemiologist. Instead, he seeks to answer questions foreclosed by DuPont's own bargain, which contractually requires it to concede general causation. The effect of the *Leach* Settlement Agreement and the meaning of "general causation" are pure questions of law, on which no expert may opine, particularly not an epidemiologist.

The affidavit of Dr. Saviotz was improperly obtained, of no scientific value and legally inconsequential. Yet, DuPont persists in efforts to undo the *Leach* Agreement and the

7

interpretation of this Court. The undersigned is now in the fifth protracted trial involving C-8 and DuPont. All plaintiffs are covered by the *Leach* Agreement. Three juries have returned verdicts against DuPont, while the fourth case settlement during trial, as DuPont agreed to pay $671 million to plaintiffs in the 3550 cases. This Court has just finished the fourth week at least a six week trial in the fifth case.

DuPont appealed the first case tried. The interpretation of the *Leach* Settlement Agreement was raised as an assignment of error. Yet, DuPont, by its own choice, dismissed the appeal, after full briefing and oral argument. Sixteen years after signing the *Leach* Settlement Agreement, five years after the first of five lengthy trials, DuPont continues, with the Savitz Affidavit, to disown it own settlement. As a result, this Court has been required to devote literally months of trial time to issues that would have been conclusively resolved, but for DuPont's conduct.

It is in this context that the Court views the Savitz Affidavit.

## IV.

In this Opinion, the undersigned has explained his distaste regarding the use of the Savitz Affidavit. The Court has considered requiring counsel to show cause as to why sanctions should not be imposed. In fairness, Mr. Burlingame has appeared before the Court on numerous occasions over the last four years. Mr. Burlingame has otherwise been very professional and ethical. The Court believes that this opinion adequately addresses the situation and that no further action regarding Mr. Burlingame is necessary.

**IT IS SO ORDERED.**

2-14-2020
DATE

EDMUND A. SARGUS, JR.
UNITED STARES DISTRICT JUDGE

8